IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER SCOTT ATKINSON,

                Plaintiff,                OPINION AND ORDER

v.                                                 15-cv-386-wmc

A.C. BROE, K. GARSTKA, T. ROBERTS,
A. WEBER, and L.C. WARD,

                Defendants.

*Pro se* plaintiff Christopher Scott Atkinson was granted leave to proceed on a number of claims against Federal Bureau of Prisons employees in Oxford, Wisconsin under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for alleged unauthorized withdrawal of money from his prison trust fund account and for alleged retaliation against him for complaining about those withdrawals.[1] Specifically, plaintiff was granted leave to proceed on: (1) a due process claim under the Fifth Amendment against defendants Garstka, Roberts and Ward; (2) a takings claim under the Fifth Amendment against defendant Garska; and (3) First Amendment claims against defendants Garska, Weber, Broe, Roberts and Ward. After the parties completed the summary judgment briefing, defendants sought leave to file a motion for judgment on the pleadings under Rule 12(c) based on the Supreme Court's decision in *Ziglar v. Abbasi*, -- U.S. --, 137 S. Ct. 1843 (2017), as well as the motion itself. (*See* dkt. ##63, 63-1, 63-2.) For the reasons enumerated below, defendants' unopposed motions will be granted.

---

[1] Leave to proceed was granted by the Honorable Barbara B. Crabb. Following summary judgment briefing, this case was transferred to me for further proceedings. (Dkt. #49.)

OPINION

Under Rule 12(c), "a party may move for judgment on the pleadings" once "the pleadings are closed -- but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is reviewed under the same standard as Rule 12(b)(6), except that the court considers not only the complaint and referenced documents, but all pleadings, as well as documents that are incorporated into any pleading by reference. *See Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017) ("A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." (citing *Buchanan-Moore v. City of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved," even with the court viewing all facts in the light most favorable to the nonmoving party. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). While the non-moving party's factual allegations are generally accepted as true in response to a 12(c) motion, "allegations in the form of legal conclusions are insufficient to survive." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)).

Defendants seek judgment on the pleadings, arguing that plaintiff's claims present new contexts for a *Bivens* suit expressly precluded post-*Abbasi*; and "special factors" identified in *Abbasi* militate against extending the *Bivens* remedy. Given that the plaintiff has not opposed dismissal under *Abbasi*, the court could simply grant the motion. However, acting *pro se*, plaintiff did oppose defendants' motion for summary judgment, and therefore, it seems appropriate to examine how this new development in the law

2

applies to plaintiff's *Bivens* claims.

I.  **Prohibition on Any "Meaningful" Expansion of *Bivens* Remedy**

The Supreme Court noted in *Abbasi* that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity" such that the Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants'" over the past thirty years. *Abbasi*, 137 S. Ct. at 1857 (internal citations omitted) (collecting cases). As a result, *Abbasi* directs that the first question a court must consider is whether the relief sought would expand the *Bivens* remedy to a new context or category of defendants? *Id.* at 1859, 1864. Moreover, "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court, then the context is new." *Id.* at 1859. The cases considered for comparison by the *Abbasi* Court were: *Bivens*, *Davis* and *Carlson*. *Id.* at 1854-55, 1860, 1864-65 (citing *Bivens*, 403 U.S. 388 (FBI agents handcuffed a man in his home without a warrant); *Davis v. Passman*, 442 U.S. 228 (1979) (Congressman fired female secretary); and *Carlson v. Green*, 446 U.S. 14 (1980) (prison officials failed to treat inmate's asthma)).

"Meaningful" differences can be found based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond . . .; the statutory or legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860. The Supreme Court further cautioned that "even a modest extension is still an extension." *Id.* at 1864.

Accordingly, after *Abbasi*, "additional scrutiny is required before a plaintiff may

proceed with a *Bivens* action if the claims arise 'in a new *Bivens* context.'" *Harris v. Dunbar*, No. 2:17-cv-00536-WTL-DLP, 2018 WL 3574736 at *2 (S.D. Ind. July 25, 2018) (quoting *Abbasi*, 137 S. Ct. at 1864) (declining to extend *Bivens* remedy to First Amendment interference with mail and Fifth Amendment due process claims). "[E]ven where a circuit court has previously found a *Bivens* remedy, that court must still consider the availability of an implied right of action in subsequent cases relying on the same precedent." *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) (citing *Vanderklok v. United States*, 868 F.3d 189, 199-200 (3d Cir. 2017)), *appeal filed*.

## II. Application of Abbasi to Plaintiff's Bivens Claims

In this case, plaintiff is asserting claims for retaliation under the First Amendment and for due process and takings clause violations under the Fifth Amendment. (*See* Order Leave to Proceed (dkt. #9) 1, 19.) Given their different constitutional footing, therefore, plaintiff's retaliation and takings claims are arguably meaningfully different from the Fourth, Fifth and Eighth Amendment claims recognized in *Bivens*, *Davis* and *Carlson*. *See Harris*, 2018 WL 3574736 at *2-*3 ("Nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment." (quoting *Akande v. Philips*, No. 1:17-cv-01243-EAW, 2018 WL 3425009 at *8 (W.D.N.Y. July 11, 2018)) (comparing plaintiff's claims with claims in *Bivens*, *Davis*, and *Carlson* and collecting Southern District of Indiana cases concluding that prisoners cannot bring a *Bivens* action for a First Amendment violation); *Davinci Aircraft, Inc. v. United States*, No. 2:16-cv-05864-CAS(JCx), 2017 WL 440232, at *8 (C.D. Cal. Jan. 30, 2017) (citing *Anoushiravani v. Fishel*, No. 04-cv-212-MO, 2004 WL 1630240, at *9 (D. Or. July

19, 2004)) (declining to find "a basis for permitting a *Bivens* claim against [air force officials] in their individual capacities" for a takings claim).² Even plaintiff's due process claims arise in a different context than that recognized in *Davis*. (*Compare* Order Leave to Proceed (dkt. #9) 7 *with*) *Davis*, 442 U.S. at 230-31 (employment-discrimination claim against congressman); *see also Gonzalez*, 269 F. Supp. 3d at 58 (explaining that "the Supreme Court has refused to extend *Bivens* contexts beyond the specific clauses of the specific amendments for which a cause of action had been implied, or even to other classes of defendants facing liability under those same clauses" (citing *Davis*, 442 U.S. at 243-44 and *Schweiker v. Chilicky*, 487 U.S. 412, 428-29 (1988))).

Further, plaintiff's *Bivens* claims fall short under a "special factors analysis." *See Abbasi*, 137 S. Ct. at 1865. As the *Abbasi* Court instructed, "a *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson*, 446 U.S. at 18). This "inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. A factor that causes the court to "hesitate before answering that question in the affirmative" is a "special factor counselling hesitation." *Id.* The Court explained that

> if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts *must* refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal court

---

² This court has been unable to find any case addressing whether a takings claim under *Bivens* survived post-*Abbasi* under any context.

jurisdiction under Article III.

*Id.* (emphasis added). Defendants identify four, specific "special factors" that they contend militate against extending *Bivens* to any of plaintiff's claims.

### A. Alternative Processes

The Supreme Court noted in *Abbasi* that "if there is an alternative remedial structure present . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action" because the alternative process may convincingly caution the Judiciary against "providing a new and freestanding remedy in damages." 137 S. Ct. at 1858. Accordingly, the Court cautioned, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863 (collecting cases). Defendants note three alternative processes through which this plaintiff could have sought relief here: the Tucker Act, the Bureau of Prison's Administrative Remedy Process, and other administrative remedies. (Mot. J. Pleadings Br. (dkt. #63-2) 12-15.) The court agrees.

First, plaintiff could have asserted claims against the United States for just compensation for public takings under the Tucker Act. *Davinci Aircraft, Inc.*, 2017 WL 440232, at *8 (citing *Anoushiravani*, 2004 WL 1630240, at *9). The Tucker Act grants the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1). Claims under the Constitution against the United States for $10,000 or less can also be brought in the federal district courts. 28 U.S.C. § 1346(a)(2).

Second, the Administrative Remedy Process Program, which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement," "applies

jurisdiction under Article III.

*Id.* (emphasis added). Defendants identify four, specific "special factors" that they contend militate against extending *Bivens* to any of plaintiff's claims.

### A. Alternative Processes

The Supreme Court noted in *Abbasi* that "if there is an alternative remedial structure present . . . that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action" because the alternative process may convincingly caution the Judiciary against "providing a new and freestanding remedy in damages." 137 S. Ct. at 1858. Accordingly, the Court cautioned, "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Id.* at 1863 (collecting cases). Defendants note three alternative processes through which this plaintiff could have sought relief here: the Tucker Act, the Bureau of Prison's Administrative Remedy Process, and other administrative remedies. (Mot. J. Pleadings Br. (dkt. #63-2) 12-15.) The court agrees.

First, plaintiff could have asserted claims against the United States for just compensation for public takings under the Tucker Act. *Davinci Aircraft, Inc.*, 2017 WL 440232, at *8 (citing *Anoushiravani*, 2004 WL 1630240, at *9). The Tucker Act grants the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution." 28 U.S.C. § 1491(a)(1). Claims under the Constitution against the United States for $10,000 or less can also be brought in the federal district courts. 28 U.S.C. § 1346(a)(2).

Second, the Administrative Remedy Process Program, which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement," "applies

to all inmates in institutions operated by the Bureau of Prisons." Administrative Remedy Program Purpose and Scope, 28 C.F.R. § 542.10(a)-(b) (2018). While an institution's warden is responsible for "[e]stablish[ing] procedures" to address requests and appeals, including "investigating and responding," 28 C.F.R. § 542.11(a)(1) (2018), plaintiff did not dispute the availability of this program at summary judgment, nor the existence of a separate process for inmates seeking money for damaged or lost property. (Defs.' Reply to Pl.'s Resp. to Defs.' PFOF (dkt. #48) ¶¶ 73, 75.) Likewise, plaintiff does not dispute that he submitted resolution forms and participated in the appellate review process. (*Id.* at ¶¶ 84, 93, 104, 106.) Accordingly, plaintiff had another alternative process available to him. *See Gonzalez*, 269 F. Supp. 3d at 60, 63 (declining to expand *Bivens* cause of action for Eighth Amendment conditions-of-confinement and Fifth Amendment due process claims because administrative complaint process and other "special factors" counseled against expansion).

Third, federal agencies can settle "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that . . . is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment." 31 U.S.C. § 3723(a)(1). This procedure is available to inmates. *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 228 n.7 (2008). Likewise, as defendants note, the attorney general is authorized to settle a claim for "damage to, or loss of, privately owned property, caused

7

by an investigative or law enforcement officer" for up to $50,000.[3] 31 U.S.C. §3724. Assuming that the unauthorized withdrawal of money from plaintiff's trust fund account "damage[d]" the account, these processes could also have been available to plaintiff.[4]

Accordingly, plaintiff had alternative processes available to him and this factor weighs against expanding *Bivens* for all of his claims. *See Goree v. Serio*, 735 Fed. App'x 894, 895 (7th Cir. 2018) ("Where Congress has established an alternative remedial structure to protect a constitutional right, the Supreme Court has strongly cautioned that the courts should not create a secondary remedy." (citing *Abbasi*, 137 S. Ct. at 1857-58)); *Vega v. United States*, 724 Fed. App'x 536, 539 (9th Cir. 2018) (affirming district court's refusal to extend *Bivens* to prisoner plaintiff's access to courts and due process claims finding that plaintiff had adequate alternative processes available to him); *Gonzalez*, 269 F. Supp. 3d at 60 ("The existence of an 'alternative, existing process' to resolve an issue, whether judicial or non-judicial, 'constitutes a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" (quoting *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012))).

Even so, plaintiff's retaliation claim gives the court additional pause because it is of a different character: he alleges that he was punished for complaining, which if true, would

---

[3] An "investigative or law enforcement officer" is "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). The definition of a "law enforcement officer" likely encompasses those working for the Bureau of Prisons. *See Ali*, 552 U.S. at 216 (concluding that § 2680(c) "cover[ed] all law enforcement officers," including Bureau of Prisons employees).

[4] Of course, if the unauthorized withdrawal of funds was the detention of property, 28 U.S.C. § 2680(c) does not extend the government's sovereign immunity waiver. *See Ali*, 552 U.S. at 220-21.

likely act as a deterrent to complaining further about retaliation, especially if the retaliatory punishment were harsh. *Cf. Jerra v. United States*, 2018 WL 1605563 (C.D. Cal. Mar. 29, 2018) (refusing to grant post-trial relief to defendants following jury verdict for plaintiff, concluding *Abbasi* did not foreclose plaintiff's *Bivens* retaliation claim in part because the retaliation claim was derivative of his use of the BOP administrative remedies), *appeal docketed*; *Loumiet v. United States*, 292 F. Supp. 3d 222 (D. D.C. 2017) (permitting *Bivens* retaliation claim to proceed because there was no alternate process), *appeal docketed*;[5] *Burgett v. Puckett*, No. 18-cv-01372-JPG, 2018 WL 4409948, at *2 (S.D. Ill. Sept. 17, 2018) (declining to dismiss retaliation claim at screening because the "complex legal issue" of whether the claim is viable after *Abbasi* "would benefit from briefing by attorneys").

Still, the majority of courts considering this question have concluded that a *Bivens* claim is no longer available for a First Amendment retaliation claim, including the Third Circuit in *Bistrian v. Levi*, -- F.3d --, 2018 WL 6816924, at *10-*11 (3d Cir. Dec. 28, 2018) (refusing to extend *Bivens* claims after *Abbasi* to cover retaliation claim of pretrial detainee). *See, e.g., Vanaman v. Molinar*, No. CV-17-00222-TUC-JGZ, 2018 WL 4698655, at *4 (D. Ariz. Sept. 28, 2018) (relying in part on BOP administrative remedy process and special factors to counsel against extending *Bivens* to First Amendment claims); *Early v. Shepherd*, No. 2:16-cv-00085-JMS-MJD, 2018 WL 4539230, at *15-*16 (S.D. Ind. Sept. 21, 2018)

---

[5] In *Loumiet*, the D.C. District Court was "not persuaded that *Abbasi* should be read" to add an additional presumption against finding a *Bivens* remedy separate from the special factors and alternative process inquiries. 292 F. Supp. 3d at 228. Likewise, the court was not persuaded that *Abbasi* prevents district courts from considering circuit precedent recognizing additional contexts for *Bivens* actions. *Id.* at 229. Finally, the factual underpinning is completely different as *Loumiet* arose in the context of retaliatory prosecution.

(finding retaliation claim "foreclosed" by *Abbasi* and recognizing alternative remedies -- including the BOP administrative process -- to address claim); *Gonzalez v. Bendt*, No.4:16-cv-04038-KES, 2018 WL 1524752, at *3-*4 (D.S.D. Mar. 28, 2018) (declining to extend *Bivens* to retaliation claim where plaintiff alleged prison official "retaliated by not providing [him] with required administrative forms when [plaintiff] tried to utilize the administrative process a second time" because "the cost, time and energy associated with defending" such a case would be "significant"), *appeal docketed*; *Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134-36 (N.D. Ala. 2017) (declining to allow plaintiff's *Bivens* retaliation claim to proceed, as it was a new *Bivens* context, there were alternative remedial processes, including that provided by the BOP);[6] *Rodriguez v. Hamel*, No. 15-cv-7980 (NHL)(KMW), 2018 WL 2254557, at *4-*5 (D. N.J. May 15, 2018) (granting motion to dismiss plaintiff's First Amendment retaliation claim even though there were no alternative remedial processes for damages available because "prison housing and the prison workplace are special factors precluding the extension of *Bivens*"); *McLean v. Gutierrez*, No. ED CV 15-275-RGK (SP), 2017 WL 6887309, at *8 (C.D. Cal. Sept. 28, 2017) (explaining that "a hostile interaction between a prisoner and prison staff does not necessarily render the grievance system unavailable, even if a threat of violence was included" (citing *McBride v. Lopez*, 807 F.3d 982, 988 (9th Cir. 2015) (addressing unavailability of grievance process)). This court will follow suit.

---

[6] In *Andrews*, the plaintiff alleged that defendant had used excessive force against him because he had exercised his First Amendment rights. 301 F. Supp. 3d at 1135. The court explained that if it recognized "an implied *Bivens* remedy for First Amendment retaliation by use of excessive force, it could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any use of force by the officers resulted from retaliatory animus." *Id.*

10

### B. Separation of Powers Concerns

Next, defendants contend that separation of powers concerns counsel against extending *Bivens*. (Mot. J. Pleadings Br. (dkt. #63-2) 15-20.) In *Abbasi*, the Supreme Court advised that "separation-of-powers principles are or should be central to the analysis" in considering whether any implied cause of action exists, because Congress "most often" is in the best position to decide if a damages remedy serves the public interest. 137 S. Ct. at 1857. Accordingly, creating and enforcing a cause of action for damages against federal officials to correct a constitutional violation under the judicial power "is a significant step under separation-of-powers principles." *Id.* at 1856. In particular, as a possible special factor counselling hesitation, the *Abbasi* Court identified "a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id.* at 1858. The Court warned that "Congress' failure to provide a damages remedy might be more than mere oversight, and that congressional silence might be more than 'inadvertent'"; with that "possibility counsel[ing] hesitation 'in the absence of affirmative action by Congress.'" *Id.* at 1862 (internal citations omitted).

The Supreme Court further noted that the promulgation of the Prison Litigation Reform Act ("PLRA") in 1995, "which made comprehensive changes to the way prisoner abuse claims must be brought in federal court," afforded Congress "specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," and arguably "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Id.* at 1865. Not surprisingly,

11

the PLRA is the first separation of powers concern identified by defendants. (*See* Mot. J. Pleadings Br. (dkt. #63-2) 16-19.) Defendants argue that it was promulgated to "limit" prisoner litigation and to reduce the strain on the legal system by stopping district courts from supervising the daily operations of prisons, pointing to 42 U.S.C. § 1997e(a), (c) and (e). (*Id.* at 16 (citations omitted).) These provisions *do* restrict prisoner litigation by: (1) requiring exhaustion of available administrative remedies before bringing suit; (2) permitting *sua sponte* dismissal of prisoner suits that "the court is satisfied" are "frivolous, malicious, fail[] to state a claim upon which relief can be granted, or seek[] monetary relief from a defendant who is immune from such relief"; and (3) permitting suits seeking compensation for "mental or emotional injury suffered while in custody" only if the plaintiff makes "a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(a), (c) & (e). Defendants also point to the *in forma pauperis* statute that likewise seeks to limit prisoner litigation. (Mot. J. Pleadings Br. (dkt. #63-2) 18.) Again, Congress appears to have restricted prisoner litigation, this time by preventing a prisoner plaintiff from bringing suit or appealing "unless the prisoner is under imminent danger of serious physical injury" if that individual has had three or more cases or appeals dismissed due to frivolity, maliciousness, or failure to state a claim. 28 U.S.C. § 1915(g). Thus, Congress's actions in the field of prisoner litigation caution against expanding *Bivens*.

The second separation of powers concern raised by defendants is Congress's failure to waive sovereign immunity under the Federal Tort Claims Act for the detention of goods by law enforcement, and the existence of congressionally authorized alternatives, 31 U.S.C. §§ 3723-24, which defendants contend are "further evidence that 'Congress would [*not*]

12

want the Judiciary to entertain a damages suit.'" (Mot. J. Pleadings Br. (dkt. #63-2) 19 (quoting *Abbasi*, 137 S. Ct. at 1858).) As addressed above, these possible alternatives counsel hesitation in expanding *Bivens* to the context here.

### C. System-Wide Costs & Effect on Duty-Performance

Defendants also argue that the system-wide costs resulting from the extension of *Bivens* counsel against expansion because of "the sheer volume of potential suits arising from the creation of a new *Bivens* remedy" in the prison context, noting that "there are more than 185,000 inmates in BOP custody and nearly 40,000 BOP employees." (Mot. J. Pleadings Br. (dkt. #63-2) 19-20.) Defendants add that "unfettered" prisoner litigation has "unique societal costs" because the prisoner plaintiffs stand to gain more than they lose by filing frivolous suits. (*Id.* at 20 (citing *Cruz v. Beto*, 405 U.S. 319, 326-27 (1972) (Rehnquist, J., dissenting).) Likewise, defendants contend that expanding *Bivens* here would harmfully impact officials' discharge of duties, and that this is "particularly significant" with regards to plaintiff's retaliation claims (*id.* at 22), which the court has already noted "present[] a classic example of a claim that is easy to allege but hard to prove" (Order Leave to Proceed (dkt. #9) 17).

The *Abbasi* Court instructed courts to consider the "impact on governmental operations systemwide," including "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the government itself when the tort and monetary liability mechanisms of the legal system are used to bring about the proper formulation and implementation of public policies." 137 S. Ct. at 1858. Likewise, the Court warned that creating a *Bivens* cause of action may result in officers "refrain[ing]

13

from taking urgent and lawful action in a time of crisis," plus "the costs and difficulties of later litigation might intrude upon and interfere with the proper exercise of their office." *Id.* at 1863. As defendants note, prison officials "need to be able to make split-second decisions and balance the needs of a diverse inmate population without fear that every decision could land them in court with their personal assets on the line." (Mot. J. Pleadings Br. (dkt. #63-2) 22.) Accordingly, these, too, are "special factors" cautioning against extending *Bivens* in the prison context.

### D. Workability

The final factor advanced by defendants as weighing against extending *Bivens* to plaintiff's claims is the "[d]ifficulty in creating workable causes of action." (*Id.* at 20.) Defendants argue that: (1) plaintiff's claims regarding how defendants "handled his grievances or placed him in a particular status . . . clearly implicate numerous BOP policies and procedures," making "judicial intervention in this realm" disfavored (*id.* at 21); and (2) the risk of "secondary or tertiary personal liability" for the conduct of other BOP staff members raises "questions about causation, what kind of notice triggers liability, and other elements of the claims that could be 'knotty to work out'" (*id.* (quoting *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007))).

*Abbasi* recognized this concern as a consideration in determining whether to extend *Bivens* to a new context: where the legal standard for the claim is "less [than] clear," that is a factor weighing against extension. 137 S. Ct. at 1864-65; *see also Vanderklok*, 868 F.3d at 209 (explaining that "the inherent uncertainty surrounding the probable cause standard is itself a factor counseling hesitation" (citing *Abbasi*, 137 S. Ct. at 1864-65)). Likewise,

14

claims that are easy to state but hard to prove weigh against extension.

As there are at least four "special factors" militating against extending *Bivens* here, defendants' motion for judgment on the pleadings is granted. *See Goree*, 735 Fed. App'x at 895("[Plaintiff's] *Bivens* claims [that defendants unlawfully encumbered his trust fund account] are premised on due-process violations that the Supreme Court does not recognize as cognizable under *Bivens*, and it would be improper to recognize a new theory of relief in this case.").

ORDER

IT IS ORDERED that:

1) Defendants' motion for leave to file a motion for judgment on the pleadings (dkt. #63) is GRANTED.

2) Defendants' motion for judgment on the pleadings (dkt. #63-1) is GRANTED.

3) Defendants' motion for summary judgment (dkt. #26) is MOOT.

Entered this 15th day of January, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge